IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CLINTON E. FRONTERHOUSE,                     07-CV-6277-BR

       Plaintiff,                          OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.


KATHRYN TASSINARI
MARK MANNING
Harder Wells Baron & Manning, PC
474 Willamette St., Suite 200
Eugene, Oregon  97068
(503) 343-4527

       Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITTANIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053


1  -  OPINION AND ORDER

**DAVID MORADO**
Office of the General Counsel
**DAVID R. JOHNSON**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-2545

       Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Clinton E. Fronterhouse seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) and found Plaintiff ineligible for Supplemental Security Income (SSI) payments under Titles II and XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

     Following a thorough review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.


### ADMINISTRATIVE HISTORY

     Plaintiff filed his application for DIB on March 15, 2005,

2   -  OPINION AND ORDER

which was denied initially and on reconsideration.  Tr. 35, 37.[1]
Plaintiff filed his application for SSI on March 18, 2005, which
was also denied initially and on reconsideration.  Tr. 39, 51,
59.  Plaintiff alleged a disability onset date of July 4, 2004,
in both applications.

An Administrative Law Judge held a hearing on December 15,
2005, and issued an opinion on April 7, 2006, in which she found
Plaintiff was not disabled.  Tr. 330-42.  A vocational expert
(VE) and a medical expert (ME) testified at the hearing.
Tr. 776.  Plaintiff requested the Appeals Council to review the
opinion.  Tr. 57.  On July 6, 2006, the Appeals Council remanded
the case to the ALJ for a second hearing.  Tr. 351.

The ALJ held a second hearing on March 26, 2007.  Plaintiff
and a VE testified at the hearing.  The ALJ issued a second
opinion on March 30, 2007, in which she found Plaintiff is not
disabled and, therefore, is not entitled to benefits.  Tr. 21-34.
That opinion became the final decision of the Commissioner on
August 2, 2007, when the Appeals Council denied Plaintiff's
request for review.  Tr. 12-14.


### BACKGROUND

Plaintiff was 54 years old at the time of the hearing.  He

---

[1]Citations to the official transcript of record filed by the
Commissioner on March 14, 2008, are referred to as "Tr."

has a high-school education.  Tr. 59.

Plaintiff was employed primarily in maintenance until July 4, 2004, when he was in a serious motorcycle accident. Tr. 95.  In the accident, Plaintiff suffered a burst fracture of his L1 vertebrae and a separated shoulder in addition to several minor injuries.  Tr. 140-44.  David Adler, M.D., performed surgery on Plaintiff to fuse the fractured vertebrae on July 9, 2004.  The fusion involved inserting a plate and an expandable cage and securing them with screws.  Tr. 157.  On June 13, 2006, Stephen McGirr, M.D., performed a second fusion on the same area.  Tr. 417, 486.

Plaintiff alleges he is disabled as a result of the following conditions:  back pain, separated shoulders, severe abdominal pain, and irritable bowel syndrome (IBS).  Plaintiff also has a history of abdominal pain, IBS, diverticulitis, and orchialgia (defined as testicular pain in *The American Heritage Stedman's Medical Dictionary* (2d ed. 2004)).  Tr. 242, 264-65, 266-67, 317.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 26-28, 30-32.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

5  -  OPINION AND ORDER

2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  *See also* 20 C.F.R. §§ 404.1520, 416.920.  Each step is potentially dispositive.

In Step One, if the Commissioner determines the claimant is engaged in substantial gainful activity, the claimant is not disabled.  *Yuckert*, 482 U.S. at 140.  *See also* 20 C.F.R. §§ 404.1520(b), 416.920(b).

In Step Two, if the Commissioner determines the claimant does not have any "medically severe impairment or combination of impairments," the claimant is not disabled.  *Yuckert*, 482 U.S. at 140-41.  *See also* 20 C.F.R. §§ 404.1520©), 416.920©).

6   -  OPINION AND ORDER

In Step Three, the claimant is presumed conclusively to be disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).

If the adjudication proceeds beyond Step Three, the ALJ must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). *See also* Social Security Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work that he has done in the past. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, the Commissioner must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here the burden shifts to the Commissioner to show a significant

number of jobs exist in the national economy that claimant can do. *Yuckert*, 482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).


## ALJ'S FINDINGS

At Step One, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2009. Tr. 25. The ALJ also found Plaintiff has not engaged in substantial gainful activity since July 4, 2004, which is Plaintiff's alleged onset date. Tr. 25.

At Step Two, the ALJ found Plaintiff has the medically determinable impairment of orchialgia and the severe impairments of chronic back pain from a burst fracture at L1, IBS, mild diverticulitis, and chronic sublaxation of the right acromyoclavicular joint (separated shoulder). Tr. 25.

At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or equals a Listing. Tr. 27. The ALJ found Plaintiff has the RFC to perform a light range of activity and can lift 20 pounds occasionally and less than 10 pounds frequently; stand or walk for 30 minutes at a time for a total of six hours in an eight-hour workday and sit for about 1 ½ hours at a time for a total of eight hours in an

8  -  OPINION AND ORDER

eight-hour workday, but must change positions every 90 minutes;
can occasionally crouch, kneel, climb, and bend; is precluded
from crawling or reaching overhead with his right arm; can
occasionally perform work with his right arm fully extended; and
must have access to a restroom at will throughout the workday.
Tr. 28.

At Step Four, the ALJ found Plaintiff cannot perform his
past relevant work.  Tr. 32.

At Step Five, the ALJ found Plaintiff is an individual
"closely approaching advanced age," has a high-school education,
and does not have any skills that are transferable to light or
sedentary employment.  The ALJ also found Plaintiff could perform
other work in the national economy.  Tr. 33.  The ALJ identified
three examples of such work drawn from the testimony of the VE:
ticket seller, small-products assembler, and electronics worker.
Tr. 33.  Thus, the ALJ concluded Plaintiff is not disabled and,
therefore, is not entitled to benefits.


## DISCUSSION

Plaintiff contends the ALJ erred by rejecting Plaintiff's
testimony and the opinion of Dr. McGirr, and, as a result
improperly concluded Plaintiff is not disabled under Rule 201.14
of the Medical-Vocational Guidelines (Grids) found at 20 C.F.R.
Part 404, Subpart P, Appendix 2, § 201.14.

I.   **Plaintiff's Testimony.**

Plaintiff contends the ALJ improperly rejected Plaintiff's subjective symptom testimony as to his sensory deficits, impaired balance, and severe pain.

Here Plaintiff testified he suffered from severe abdominal and groin pain while he was in the hospital following the July 2004 surgery and his pain has never completely abated.  Tr. 783, 471.  Since the second surgery in June 2006, Plaintiff states he also suffers from almost constant pain across his lower back, in his right pelvic area, down his right leg, and in his left groin area.  Tr. 834.  On June 12, 2006, Plaintiff also completed an Adult Function Report in which he reported his impairments limit his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and concentrate.  Tr. 433.  He stated in an undated Appeal Disability Report that he has experienced increased difficulties with walking, balance, and weakness in his right leg following his second back surgery.  Tr. 417.

In *Cotton v. Bowen,* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir.

10   -  OPINION AND ORDER

1991).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id.*  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834).

The ALJ determined Plaintiff's chronic back problems and IBS are severe impairments.  In addition, nearly all of the doctors who treated or examined Plaintiff, including Dr. Adler; Dr. McGirr; Joan Jensen, M.D.; and DDS[2] physician Scott Bleazard, M.D., link Plaintiff's symptoms to his impairments.  Tr. 471, 474, 450-51, 732.  Moreover, Plaintiff was treated for neuro-pathic pain by Peter Kosek, M.D.  Tr. 641-42.  Accordingly, the Court finds Plaintiff has satisfied the first two prongs of the *Cotton* test by providing evidence of impairments that could

---

[2] Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

reasonably cause him some degree of pain.  799 F.2d at 1407.
Because the ALJ did not determine Plaintiff is malingering, the
ALJ must provide clear and convincing reasons for rejecting
Plaintiff's subjective pain testimony.  *See Lester*, 81 F.3d at
834.

     The ALJ found Plaintiff's "statements concerning the
intensity, duration, and limiting effects" of his symptoms are
not entirely credible.  Tr. 28.  Plaintiff's treating and
examining physicians, however, found his alleged symptoms to be
consistent with his impairments.  Tr. 450-51, 471, 474, 641, 732.
The record also reflects Plaintiff consistently reported and
sought treatment for back, abdominal, and groin pain.  Tr. 468,
476, 481, 617, 765.

     In addition, the ALJ also rejected Plaintiff's testimony on
the ground that he did not seek medical assistance for pain
control between July 2004, the time of his first back surgery,
and December 2005, the time of his first hearing before the ALJ.
Tr. 28.  The record reflects, however, Plaintiff did not always
have health insurance and, therefore, could not always afford to
seek treatment.  Tr. 450, 465, 786.  If a claimant cannot afford
medical treatment, his failure to obtain treatment cannot be a
basis for discrediting his testimony.  *Gamble v. Chater*, 68 F.3d
319, 321 (9th Cir. 1995).  *See also Dover v. Bowen*, 784 F.2d 335,
337 (8th Cir. 1986).  In addition, Plaintiff stated he

discontinued his use of strong narcotics after his first surgery
because he feared he would further damage his spine without
realizing it.  He used ibuprofen instead, which reduced his pain
but did not eliminate it completely.  Tr. 791.

The ALJ also discredited Plaintiff's testimony on the ground
that Plaintiff stated at the first hearing that he could probably
"do some other line of work in which he could not hope to
duplicate his past earnings."  Tr. 28.  The record reflects the
ALJ asked Plaintiff whether he had considered a "lighter line of
work," and Plaintiff responded that he had considered it and
thought he could perform light work if he had assistance.
Tr. 797.  The medical evidence in the record limits Plaintiff
to sedentary work (*i.e.*, "light work").  Thus, Plaintiff's
testimony that he could do some type of sedentary work does not
undermine his credibility.

On this record, the Court concludes the ALJ erred when she
rejected Plaintiff's testimony because the ALJ did not give
legally sufficient reasons supported by the record for doing so.

**II.  Dr. McGirr.**

Plaintiff contends the ALJ improperly rejected the opinion
of Dr. McGirr, a treating physician, that Plaintiff's impairments
only allow him to perform sedentary work.

An ALJ may reject an examining or treating physician's
opinion when it is inconsistent with the opinions of other

treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas*, 278 F.3d at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

On June 2, 2006, Plaintiff presented to Dr. McGirr for a neurological consultation and second opinion regarding Plaintiff's previous lumbar fracture.  Dr. Adler had earlier opined a second surgery was unnecessary.  Tr. 471.  At the

June 2, 2006, consultation, however, Dr. McGirr recommended a second surgery to correct problems caused by the fracture of the two inferior screws holding the fixation plate in Plaintiff's back and by the lack of bone growth after the first surgery. Tr. 450-51. On June 13, 2006, Dr. McGirr performed the second surgery. Tr. 451, 486. Plaintiff was unable to walk afterwards, developed pain in his right thigh, and had difficulties with sensation and coordination in his right leg. Tr. 490. Dr. McGirr referred him to physical and pain-management therapy. Tr. 486. When Plaintiff was discharged from the hospital on June 30, 2006, Dr. McGirr noted Plaintiff had improved strength and control over his lower extremities, but he still had difficulties in gait that required the use of a walker. Tr. 510.

On July 31, 2006, Dr. McGirr saw Plaintiff for a followup appointment after his surgery and noted improvement in Plaintiff's symptoms and bone growth. Tr. 570. On August 4, 2006, Dr. McGirr noted Plaintiff's x-rays showed normal bone growth and did not show any abnormality in regard to the screws. Tr. 571. On September 11, 2006, and September 13, 2006, Dr. McGirr made similar notations. Tr. 568-69. Dr. McGirr also noted Plaintiff's use of his right leg had improved in terms of motor strength and ambulation. Tr. 568. Beginning in November, however, Plaintiff's symptoms worsened. On November 8, 2006, Dr. McGirr expressed concern that Plaintiff's nausea and

abdominal pain were related to problems with his lumbar spine.
Tr. 611.  On November 29, 2006, Dr. McGirr noted continued
activity in the area of the surgery that suggested incomplete
fusion.  Tr. 613.  He noted Plaintiff continued to have
significant back pain and renewed Plaintiff's prescription for
Percocet.  Tr. 613.  In a chart note on December 14, 2006,
Dr. McGirr noted good bone growth and good positioning of the
plate, but he also opined Plaintiff had "some cord or nerve
root continuing irritation" that was not reflected in scans of
the area.  Tr. 627.  In a letter to Plaintiff's counsel on
December 31, 2006, Dr. McGirr reported Plaintiff had "persisting
spinal cord and nerve root injuries resulting in significant back
pain and an inability to maintain postures or to perform work
above a sedentary level."  Tr. 623.

The ALJ did not give any weight to Dr. McGirr's opinion that
Plaintiff is able to perform only sedentary work because of his
persisting spinal-cord and nerve-root injuries.  Tr. 31.  The ALJ
found Dr. McGirr's assessment of these injuries to be "entirely
speculative" in light of the ME's report and Dr. McGirr's own
records.  Tr. 32.  In addition, the ALJ noted Dr. McGirr did not
give any indication that Plaintiff's impairments were expected to
last more than 12 months.  Tr. 32.

The ME, a reviewing physician, testified at the first
hearing.  Tr. 819.  At the hearing the ME summarized the medical

evidence and testified Plaintiff did not meet or equal a Listing because the ME expected Plaintiff improve substantially within six months to a year of his surgery and to recover to the extent that he would be able to work within 12 months.  Tr. 820, 825. The ME also opined Plaintiff's abdominal pain was caused by his IBS.  Tr. 827.

The ME's testimony, however, is contradicted by the opinions of Dr. McGirr, a treating physician; Dr. Kosek, a treating physician; and Dr. Jensen, an examining physisican.  On May 21, 2007, Dr. Jensen performed a neurology consultation on Plaintiff in which she noted at least one broken screw is still present as well as abnormal lucency surrounding the plate, which suggests "motion and loosening."  Tr. 731.  This "motion and loosening" caused Dr. Jensen great concern.  Tr. 732.  Dr. Jensen also reported Plaintiff was still experiencing numbness in his right leg, tingling in his right foot, and pain in his lower abdomen that worsens with activity.  Tr. 732.  Dr. Jensen observed Plaintiff's balance was significantly impaired, and she opined Plaintiff's pain complaints "fit very well into an L1 radicular distribution."  Dr. Jensen also stated it is "reasonable to conclude [Plaintiff] has a left L1 radiculopath, which has resulted from his motor vehicle accident" in July 2004.  Tr. 735. Finally, Dr. Jensen opined it was "very possible" the broken

screw and potential for movement of the plate were contributing to Plaintiff's ongoing pain.  Tr. 735.  Dr. Kosek, Plaintiff's pain-management specialist, also opined Plaintiff had a nerve-root injury.  Tr. 765.

The record reflects Plaintiff sought treatment from both Drs. Adler and McGirr for significant ongoing pain after the first surgery in July 2004.  Tr. 450-51, 468-74.  Dr. McGirr advised Plaintiff as to both nonsurgical or surgical options. Tr. 450-51.  Plaintiff chose to undergo a second surgery. Tr. 450-51.  After the second fusion surgery, Plaintiff experienced some improvement initially, but his symptoms were worse after about four months.  Tr. 627.  In rejecting Dr. McGirr's opinion, the ALJ relies heavily on Dr. McGirr's December 14, 2006, progress report in which he noted he did not see "any nerve root compromise."  Tr. 627.  Dr. McGirr went on to report, however, that Plaintiff "*must have* some cord or nerve root continuing irritation although the CT scan does not really betray the reason why."  Tr. 627 (emphasis added).  In other words, it was Dr. McGirr's opinion that Plaintiff had sustained nerve root and spinal injuries although he could not pinpoint the exact reason for Plaintiff's continued pain.  Tr. 623, 627. Dr. McGirr's opinion, therefore, is consistent with his own notes

and with the opinions of Drs. Jensen and Kosek.  Tr. 735, 765.

The ALJ also found Dr. McGirr did not indicate that
Plaintiff's condition would last longer than 12 months.  Tr. 28.
The record, however, reflects otherwise:  For example, Dr. Jensen
opined Plaintiff's pain dated from his motorcycle accident on
July 4, 2004, Tr. 735; Plaintiff sought treatment from
Drs. Adler and McGirr for symptoms that had been ongoing since
the first surgery, Tr. 450-51, 468-74; and Dr. McGirr reported on
December 31, 2006, that Plaintiff was no longer improving.
Tr. 623.  In addition, Plaintiff's treating and examining
physicians opined Plaintiff had persisting nerve-root injuries
that were not expected to abate.  Tr. 735, 765.  As noted, "[t]he
opinion of a nonexamining physician [*i.e.*, the ME in this case]
cannot by itself constitute substantial evidence that justifies
the rejection of the opinion of either an examining physician or
a treating physician."  *Lester*, 81 F.3d at 831.

On this record, therefore, the Court concludes the ALJ erred
when she rejected Dr. McGirr's opinion as to Plaintiff's medical
condition and his ability to perform only sedentary work because
the ALJ did not provide legally sufficient reasons supported by
the record for doing so.

When "the Commissioner fails to provide adequate reasons for
rejecting the opinion of a treating or examining physician, the

Court may credit that opinion 'as a matter of law.'" *Lester*, 81 F.3d at 834 (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)).  The Court, therefore, credits Dr. McGirr's opinion as a matter of law and, accordingly, finds Plaintiff is only capable of performing sedentary work.

The Medical-Vocational Guidelines (Grids) provide: "Individuals approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work.  When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains."  20 C.F.R. part 404, subpt. P, app. 2, § 201.14.  Here Plaintiff is a person who is "closely approaching advanced age" with a high-school education, no past relevant work, and no skills that are transferable to light or sedentary employment.  Under the Grids, therefore, the Court concludes Plaintiff is disabled.  *See* 20 C.F.R. part 404, subpt. P, app. 2, § 201.14.

## REMAND

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the Court.  *Harman*, 211 F.3d 1178.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

Here the Court finds the record is complete regarding Plaintiff's impairments. The Court credits Dr. McGirr's opinion that Plaintiff is only capable of sedentary work on a regular and continuing basis because of his impairments and, accordingly, the Court concludes Plaintiff is disabled under the Grids. Thus, the

Court concludes further proceedings in this matter would not be useful.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

Section 406(b) of the Social Security Act "controls fees for representation [of Social Security claimants] in court." *Gisbrecht v. Barnhart*, 535 U.S. 789, 794 (2002)(citing 20 C.F.R. § 404.1728(a)). Under 42 U.S.C. § 406(b), "a court may allow 'a reasonable [attorneys'] fee . . . not in excess of 25 percent of the . . . past-due benefits' awarded to the claimant." *Id*. at 795 (quoting 42 U.S.C. § 406(b)(1)(A)). Because § 406(b) does not provide a time limit for filing applications for attorneys' fees and Federal Rule 54(d)(2)(B) is not practical in the context of Social Security sentence-four remands, Federal Rule of Civil Procedure 60(b)(6) governs. *Massett v. Astrue*, 04-CV-1006 (Brown, J.)(issued June 30, 2008). *See also McGraw v. Barnhart*, 450 F.3d 493, 505 (10th Cir. 2006). To ensure that any future application for attorneys' fees under 42 U.S.C. 406(b) is filed "within a reasonable time" as required under Rule 60(b)(6), the Court orders as follows: If Plaintiff intends to submit an application for attorneys' fees under § 406(b), Plaintiff shall

submit such application within 60 days from receipt of the Notice of Award by the Commissioner.

IT IS SO ORDERED.

DATED this 26th day of November, 2008.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


23  -  OPINION AND ORDER